**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 20-308-1** |
| | : | |
| **ROMEL BOLGER** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                                 **December 9, 2020**

In an curiously contradictory twist, a convicted felon and 2019 graduate of our Court's Reentry Program now back in prison as a pretrial detainee after the grand jury charged him with attempting to purchase $700,000 of cocaine from an undercover agent in August 2020, now moves for pretrial release fearing COVID-19 outbreak in the Federal Detention Center. He now fears contracting COVID-19. He apparently did not have this fear when allegedly seeking to purchase a significant amount of cocaine four months ago in a car and hotel room without wearing a mask or social distancing. His obesity and other factors place him at risk, but he has not shown the Detention Center is failing to mitigate his risk. He is not deteriorating as confirmed by our review of his sealed medical records. He is a significant flight risk with apparent access to substantial cash facing a minimum of ten years and a maximum of life should he be convicted for this August 2020 drug dealing. He offers no place to live upon release. He fails to adduce a basis for pretrial release.

**I.    Background**

Our jury found Romel Bolger guilty of two counts of possession with intent to distribute a controlled substance over twelve years ago arising from trafficking sixty-one kilograms of cocaine and involvement in a violent shoot-out injuring Mr. Bolger.[1] Judge Savage sentenced

Mr. Bolger in 2008 to 110 months of imprisonment and five years of supervised release.[2] Following his imprisonment, Mr. Bolger successfully participated in and graduated from our Court's Reentry Program warranting the United States' consent to a reduced term of supervised release and Judge Savage reducing his term of his supervised release by one year. He completed his sentence in January 2019. We expected Mr. Bolger to further his life consistent with his goals in the Reentry Program.

      **A.**      **Mr. Bolger's charged August 2020 conduct.**

A special agent with the Drug Enforcement Agency swore Romel Bolger and an accomplice attempted to purchase approximately twenty kilograms of cocaine from an undercover officer in August 2020 in exchange for $700,000 in two duffel bags.[3] In the days leading up to the attempted purchase, the agent swore Mr. Bolger spoke to the undercover officer and a confidential informant on recorded phone calls various times to plan the transaction details.[4] The agent swore Mr. Bolger also personally met with the undercover officer before the purchase and confirmed he would be willing to purchase thirty kilograms of cocaine.[5] The undercover officer and Mr. Bolger subsequently exchanged text messages setting the transaction amount at twenty kilograms of cocaine, as well as the location and other details of the transaction.[6]

According to the agent, video surveillance shows Mr. Bolger leaving a home with a dark colored duffel bag and meeting the undercover agent at the agreed-upon location.[7] Video surveillance also apparently shows Mr. Bolger pointing the undercover officer to duffel bags containing a large amount of money and inspecting a sample of cocaine provided by the undercover officer.[8] Officers arrested Mr. Bolger and his accomplice as they attempted to enter a hotel with the undercover officers to close the transaction.[9] At the time of the arrest, Mr. Bolger

and his accomplice possessed over $700,000 dollars, a money counter, a scale, baking soda, an electric heating element, a butter knife, and a glass cooking pan.[10] The special agent swore, based on his training and experience, these items are traditionally used for the manufacture of drugs.[11] A search of Mr. Bolger's home further revealed a large brown box containing almost $200,000.[12]

Our grand jury indicted Romel Bolger with attempt to possess with intent to distribute and aiding and abetting the attempted possession with intent to distribute five or more kilograms of a mixture and substance containing cocaine.[13] If found guilty, we must sentence Mr. Bolger to a minimum of ten years up to life in prison.

The United States moved for Mr. Bolger's pretrial detention, citing to its evidence in the instant case and his criminal history in support.[14] The United States further argued Mr. Bolger posed a risk of flight because he had access to large sums of money before his arrest and had used at least eight aliases in the past.[15] Mr. Bolger moved for his pretrial release the next day, arguing he is at a high risk of severe illness from COVID-19.[16] After conducting an evidentiary hearing, Judge Lloret ordered Mr. Bolger detained pending further proceedings, concluding Mr. Bolger's "significant" criminal history, the weight of the evidence against Mr. Bolger, and the likelihood Mr. Bolger would be incarcerated for a significant period of time increased the risk of flight and established the danger he posed to the community.[17] He further found Mr. Bolger failed to rebut the presumption that no condition of release, or combination of conditions, would reasonably assure the safety of any person and the community or reasonably assure his appearance.[18] Mr. Bolger is currently detained at the Federal Detention Center Philadelphia.

**B.    COVID-19 affecting inmates and staff members at the Detention Center.**

Mr. Bolger explains the Detention Center reported positive COVID-19 cases within its population of inmates and staff. As we understand today from our own review, COVID-19 is a respiratory disease spreading mainly through droplets produced when an infectious person, even one who is asymptomatic, talks, coughs, or sneezes.[19] The virus can also be spread through the air.[20] The practice of social distancing – or staying six feet away from others – can reduce the spread of the virus.[21]

COVID-19 poses a serious global public health risk. As of December 9, 2020, the Centers for Disease Control and Prevention reported a total of 15,040,175 cases of COVID-19 in the United States with 285,351 total deaths caused by the virus.[22] People of any age with the following conditions *are* at increased risk of severe illness from COVID-19: cancer; chronic kidney disease; COPD (chronic obstructive pulmonary disease); immunocompromised state (weakened immune system) from solid organ transplant; obesity (body mass index [BMI] of 30 kg/m2 or higher); serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; sickle cell disease; pregnancy; a history of smoking; and Type 2 diabetes mellitus.[23] People of any age with the following conditions *might* be at an increased risk for severe illness from COVID-19: asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; pulmonary fibrosis (having damaged or scarred lung tissues); a body mass index greater than 25 kg/m2; pulmonary fibrosis; Thalassemia (a type of blood disorder); and Type 1 diabetes mellitus.[24]

Mindful correctional facilities face unique challenges in controlling the transmission of COVID-19, the Centers for Disease Control issued guidance to prisons and correctional facilities to help them prevent the spread of COVID-19.[25] Following this guidance, the Bureau of Prisons adopted aggressive safety measures, assuring "maintaining safety and security of [its] institutions is [its] highest priority."[26]  We are aware the Detention Center adopted a variety of safety measures including suspending social visitation, limiting inmate movement, screening all persons who enter the facility, testing and quarantining all new commitments to the facility and modifying operations within the housing center.  While these measures may have initially slowed the spread of the virus, the Detention Center unfortunately suffered a recent outbreak, resulting in over ten percent of its inmates becoming infected at once. We understand the Detention Center has since attempted to contain the virus, and our most recent report states nineteen inmates and twelve staff members are currently COVID-19 positive.[27] Since it began testing, the Detention Center has reported 236 positive COVID-19 cases among its inmates out of a total of 930 inmates tested.[28]

### C. Mr. Bolger's health concern.

Thirty-nine-year-old Mr. Bolger's medical records show he suffers from a variety of medical conditions, including hypertension, Type II diabetes with diabetic neuropathy, chronic bronchitis, and sleep apnea.[29] Mr. Bolger also has a Body Mass Index of 48.3, placing him in the morbidly obese category.[30] Mr. Bolger takes various medications to control his conditions, including lisinopril for his high blood pressure, metformin and glipizide for his diabetes, and an inhaled Corticosteroid and Albuterol rescue inhaler for his respiratory issues.[31] Mr. Bolger's doctors recently instructed him to double his dosage of blood pressure medication because of

continued increased blood pressure levels.[32] His medical records do not evidence complications from these conditions.[33]

Mr. Bolger has been in quarantine since November 11, 2020 because of potential exposure to COVID-19.[34] His medical records show he has been asymptomatic and tested negative for COVID-19 on three previous occasions, with his most recent negative result reported on November 15, 2020.[35]

### D. Mr. Bolger's plans upon release.

Mr. Bolger does not state where he plans to reside if granted pretrial release, although he claims his mother and son reside in Philadelphia.[36] He agrees to be subject to conditions such as electronic monitoring, surrender of his passport, and regular check-ins with Pretrial Services.[37]

## II. Analysis

Mr. Bolger moves for pretrial release under Congress' safety valve in the Bail Reform Act, 18 U.S.C. § 3142(i), allowing us to reexamine Mr. Bolger's detention pending trial "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[38] Mr. Bolger argues his temporary release is warranted because his obesity, diabetes, hypertension, sleep apnea, and chronic bronchitis place him at an increased risk of severe illness from COVID-19.[39] He further argues he is not a flight risk because he has strong ties to Philadelphia and will agree to be subject to various court-ordered conditions if released.[40] The United States opposes Mr. Bolger's release. It concedes Mr. Bolger's medical conditions increase his risk of severe illness from COVID-19, but argues his medical conditions are in control at the Detention Center and do not present a compelling reason for his release.[41] The United States further argues Mr. Bolger's criminal history and the strong

evidence in this case outweigh any health risks he may face and demonstrate he is a flight risk and danger to the community.[42]

Congress, through the Bail Reform Act, "mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community."[43] If "conditions, or a combination of conditions, can be fashioned to reasonably provided such assurances, the individual must be released."[44] Detention is "the carefully limited exception."[45] If the person committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," however, there is a rebuttable presumption in favor of detention.[46]

Remaining mindful Mr. Bolger has been charged with a crime subject to the statutory presumption, we evaluate Mr. Bolger's motion in two steps. We must first evaluate whether Mr. Bolger's health conditions present a compelling reason for his release within the context of the COVID-19 pandemic. If we find Mr. Bolger's health conditions constitute a compelling reason for his release, we must then apply the factors Congress identified in section 3142(g) to determine if we can construct conditions of release to reasonably assure the appearance of Mr. Bolger at trial and the safety of any other person and the community.

After careful consideration, we find Mr. Bolger's medical conditions, while serious, do not present a compelling reason for his release because they are being adequately treated at the Detention Center, which has worked to contain its recent COVID-19 outbreak. Even assuming he does have a compelling reason for his release, we conclude, after considering Congress' direction in section 3142(g), Mr. Bolger fails to rebut the presumption there are no conditions of release adequate to assure his appearance at trial and the safety of the community.

> **A.    Mr. Bolger's medical conditions do not constitute a compelling reason for his temporary release given no deterioration and ongoing suitable care.**

Mr. Bolger argues his various medical conditions – severe obesity, diabetes, hypertension, chronic bronchitis, and sleep apnea – increase his risk of severe illness if he contracts COVID-19, constituting a compelling reason for his release.[47] He further cites to Detention Center updates ordered by Judge Brody, which evidence positive COVID-19 tests among inmates and staff members.[48] The United States concedes Mr. Bolger's medical issues increase his risk of severe illness from COVID-19 but argues his medical conditions have remained virtually unchanged, and are therefore being sufficiently treated, at the Detention Center.[49] It further argues the Bureau of Prisons has taken many steps to stem the recent outbreaks at the Detention Center, including placing Mr. Bolger in quarantine and periodically testing him.[50] The United States further points out Mr. Bolger committed the instant offenses during the pandemic and without taking any proper precautions.[51]

Our Court of Appeals instructs "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release."[52] Courts evaluating motions for release under Section 3142(i) in this ongoing COVID-19 era typically evaluate four factors: the specificity of the petitioner's stated COVID-19 concerns; the original grounds for the petitioner's pretrial detention; the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the petitioner; and the likelihood that the petitioner's proposed release would increase COVID-19 risks to others.[53] Consistent with these requirements, courts have generally granted motions for release during this global pandemic where the petitioner adduces evidence of a particularized risk of severe illness from the virus.[54] They have conversely denied motions based on a generalized fear of contracting the virus where petitioner lacks any medical vulnerabilities.[55]

8

As the United States recognizes, Mr. Bolger is undoubtedly at an increased risk of severe illness from COVID-19 because of his medical conditions. The Centers for Disease Control reports adults of any age who suffer from severe obesity (Body Mass Index greater than or equal to forty), Type II diabetes, or chronic lung conditions including chronic bronchitis – all conditions Mr. Bolger presents in his medical records – are at an increased risk of severe illness. The agency further reports having high blood pressure may increase risk of severe illness. We further find Mr. Bolger faces a non-speculative risk of contracting COVID-19 at the Detention Center. While we understand the Detention Center has attempted to contain its recent outbreak, its most recent report states nineteen inmates and twelve staff members are still COVID-19 positive.

While we appreciate this risk considering the severity of Mr. Bolger's conditions, we do not find it to be a sufficiently compelling reason for his temporary release. As the United States notes, we recently granted a petitioner's third motion for pretrial release in *United States v. Salley*.[56] The United States argues Mr. Bolger's circumstances are distinguishable from Mr. Salley's for various reasons.[57] We agree. In granting Mr. Salley's pretrial release, we found not only does Mr. Salley suffer from various medical conditions placing him at an increased risk of severe illness from COVID-19, but his medical records showed the Detention Center could not control and monitor his conditions; Mr. Salley had to be hospitalized on multiple occasions in the month before his release for acute rejection of his kidney transplant and worsening symptoms.[58] He further contracted COVID-19 the day after his counsel filed his motion, near the height of the Detention Center's outbreak.[59]

Unlike in *Salley*, "there is nothing in the record reflecting that [Mr. Bolger] is not receiving treatment for his health concerns while in [the Detention Center], or that the prison is

9

not taking steps to mitigate his risk for infection."[60] Mr. Bolger regularly takes medication for his various ailments and the dosages of these medications have been adjusted whenever necessary. His medical records do not evidence any symptoms or complications from his conditions. Mr. Bolger has further been quarantined and periodically tested after potential exposure to COVID-19. He does not argue he would receive better treatment for his medical conditions elsewhere or explain how his unidentified release plans would mitigate his risk of contracting COVID-19.

Mr. Bolger fails to provide us with a compelling reason for his temporary release.

### B.  We are not aware of conditions warranting release.

Even if we found Mr. Bolger's medical conditions sufficiently compelling, we must weigh those medical conditions against Congress' prohibiting us from releasing a person who endangers the community or poses a flight risk.[61] We must consider whether there are any conditions of release which could meet Congress' concerns. As Mr. Bolger offers no place to live and his criminal history, access to substantial funds, and weight of the evidence mandates we deny pretrial release.

We weigh Mr. Bolger's proffered compelling reason against the factors we consider when ordering release or detention of a defendant pending trial under section 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including the person's character, physical and mental condition, family ties, criminal history, and record of appearing at court proceedings); whether the person was on probation, parole, or other court supervision at the time of the alleged offense; and the nature and seriousness of the danger to any person or the community posed by the

10

defendant's release.[62] The United States has the burden of persuasion to show Mr. Bolger presents a danger to the community by clear and convincing evidence.[63] We find, as Judge Lloret did, evaluation of these factors amply demonstrates Mr. Bolger poses a flight risk and a danger to the community, outweighing the severity of his chronic illness amidst the COVID-19 pandemic.[64]

The serious nature of Mr. Bolger's charged conduct and the apparently strong evidence (including video and audio recordings) against him support his pretrial detention. The grand jury charges Mr. Bolger with attempting to purchase a very large amount – twenty kilograms – of cocaine from an undercover officer. He possessed over $700,000 cash in duffel bags; he demonstrated access to large amounts of money allowing him to more readily flee our supervision. He is alleged to be a significant drug dealer. He is not alleged to be a corner drug dealer here on his first offense and facing health risks. The weight of the evidence against Mr. Bolger appears to be substantial; the United States asserts it has: video recordings of Mr. Bolger meeting with the undercover officer to plan out details of the purchase and attempting to carry out the transaction; recorded phone calls and text messages between Mr. Bolger, the confidential informant, and undercover officer in which Mr. Bolger makes incriminating statements; and physical evidence consisting of hundreds of thousands of dollars and paraphernalia typically used to manufacture drugs.

Mr. Bolger's personal characteristics and criminal history heavily weigh against his temporary release pending trial. A jury found Mr. Bolger guilty of two counts of possession with intent to distribute controlled substances in 2008 for which Judge Savage sentenced Mr. Bolger to 110 months of imprisonment and five years of supervised release. The instant conduct occurred within two years of completing this significant sentence, evidencing Mr. Bolger's

continued disregard for the law and lack of rehabilitation. Mr. Bolger has also previously been convicted of possession of a controlled substance and has a juvenile adjudication for simple assault.[65] This propensity to commit serious crimes, even after having served many years in prison, demonstrates he presents a flight risk and a danger to the community and others if released. Mr. Bolger also offers no concrete address while on pretrial release.

Judges have denied release from pretrial detention in similar circumstances, finding the seriousness of the crimes and a criminal history outweighed health issues facing the pretrial detainee. In *United States v. Robinson*, for example, Judge McHugh denied pretrial release to a petitioner charged with selling large amounts of methamphetamine and handguns to a special agent and cooperating informant despite petitioner's concerns about his asthma, obesity, and lesions on his liver in light of the pandemic.[66] Judge McHugh found the seriousness of these charges, strong evidence of petitioner's guilt, and criminal history including drug trafficking and unlawful possession of a firearm outweighed petitioner's health concerns.[67] Judge Carlson in *United States v. Maldonado* similarly denied pretrial release to a thrice convicted drug trafficker, finding the seriousness of petitioner's instant drug trafficking and firearm charges and his extensive criminal history outweighed petitioner's concerns of contracting COVID-19.[68] Judge Carlson noted the almost sixty-year-old petitioner's medical conditions including high blood pressure, two stents in his heart, and coronary artery disease seemed to be "well-managed" in prison.[69]

Mr. Bolger's circumstances are analogous to *Robinson* and *Maldonado*. Mr. Bolger, even after being convicted twice before for drug-related crimes and serving almost ten years in prison, has again been charged with a serious drug trafficking crime carrying a maximum sentence of life imprisonment and a minimum mandatory sentence of ten years. It also appears the weight of

12

evidence against Mr. Bolger is significant, consisting of video recordings, phone calls, text messages, and physical evidence. These factors outweigh Mr. Bolger's health concerns stemming from his seemingly stable and controlled medical conditions.

We find no basis for pretrial release consistent with Congress' mandate.

## III.   Conclusion

After careful consideration, we find health risks Mr. Bolger may face due to COVID-19 are outweighed by the risk of flight and of danger to the community he poses if he is released pending trial. We deny Mr. Bolger's motion for temporary release from pretrial detention without prejudice.

---

[1] Indictment, *United States v. Bolger*, No. 07-388-2 (E.D. Pa.) (ECF Doc. No. 1); Apr. 23, 2008 Presentence Investigation Report, *United States v. Bolger*, No. 07-388-02, ¶¶ 10-20 (E.D. Pa.).

[2] Apr. 24, 2008 Judgment, *United States v. Bolger*, No. 07-388-02 (E.D. Pa.) (ECF Doc. No. 163).

[3] ECF Doc. No. 1 ¶¶ 3-24.

[4] *Id.* ¶¶ 6-13.

[5] *Id.* ¶ 10.

[6] *Id.* ¶¶ 12-15.

[7] *Id.* ¶¶ 16-17.

[8] *Id.* ¶¶ 18-19.

[9] *Id.* ¶¶ 20-21.

[10] *Id.* ¶ 21.

[11] *Id.*

[12] *Id.* ¶ 23, ECF Doc. No. 7 at 3.

13

[13] ECF Doc. No. 7.

[14] ECF Doc. No. 11 at 8-9.

[15] *Id.* at 9.

[16] ECF Doc. No. 5.

[17] ECF Doc. No. 11 at 10-13. We mooted Mr. Bolger's first motion for release based on Judge Lloret's findings. ECF Doc. No. 10.

[18] ECF Doc. No. 11 at 12.

[19] United States Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19), Social Distancing* (last updated Nov. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html.

[20] *Id.*

[21] *Id.*

[22] United States Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19) Data Tracker*, (last updated Dec. 9, 2020), https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days.

[23] United States Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions*, (last updated Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html).

[24] *Id.*

[25] United States Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19), Guidance for Correctional & Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Oct. 21, 2020).

[26] Federal Bureau of Prisons, *Updates to COVID-19 Action Plan*, (last updated Mar. 19, 2020). https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

[27] Dec. 7, 2020 Letter re: FDC Update, *Brown v. Pistro*, No. 20-1914 (E.D. Pa.) (ECF Doc. No. 155).

[28] Federal Bureau of Prisons, *COVID-19 Inmate Test Information*, (last visited Dec. 9, 2020), https://www.bop.gov/coronavirus/.

14

[29] ECF Doc. No. 22 at 4-8.

[30] *Id.* at 9.

[31] *Id.* at 8.

[32] *Id.* at 4.

[33] *See generally id.*

[34] *Id.* at 1-2.

[35] *Id.* at 1, 16, 61, 73.

[36] ECF Doc. No. 21 at 6.

[37] *Id.*

[38] 18 U.S.C. § 3142(i).

[39] ECF Doc. No. 21 at 4-5.

[40] *Id.* at 6.

[41] ECF Doc. No. 30 at 10-12.

[42] *Id.* at 4-6, 11-13.

[43] 18 U.S.C. § 3142.

[44] *Id.*

[45] *United States v. Salerno*, 481 U.S. 739, 755 (1987).

[46] 18 U.S.C. § 3142(e)(3)(A).

[47] ECF Doc. No. 21 at 2-3.

[48] *Id.* at 2.

[49] ECF Doc. No. 30 at 10-12.

[50] *Id.* at 7-9.

[51] *Id.* at 6-7.

---

[52] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

[53] *United States v. Grimes*, No. 16-59, 2020 WL 3056060, at *6 (E.D. Pa. June 9, 2020).

[54] *See, e.g., Grimes*, 2020 WL 3056060, at *6-8 (granting motion for pretrial release where petitioner suffered from chronic asthma uncontrolled while in custody at the FDC Philadelphia); *United States v. Somerville*, 463 F. Supp. 3d 585, 597-600 (W.D. Pa. May 29, 2020) (granting compassionate release where petitioner suffered from hypertension, hyperlipidemia, chronic bronchitis, asthma, and obesity and resided in a prison identified as a "hotbed" of COVID-19).

[55] *See, e.g., United States v. Carter*, No. 18-561-1, 2020 WL 3412571, at *7 (E.D. Pa. June 22, 2020) (denying pretrial release where petitioner's concerns about COVID "lack the particularized vulnerability to COVID-19 needed to constitute a compelling reason"); *United States v. Sterling*, 459 F. Supp. 3d 673, 679 (E.D. Pa. 2020) (denying pretrial release where young petitioner in good health failed to demonstrate an increased susceptibility to severe illness from COVID-19).

[56] No. 19-688, 2020 WL 7024253, at *5-10 (E.D. Pa. Nov. 30, 2020).

[57] ECF Doc. No. 30 at 12.

[58] *Salley*, 2020 WL 7024253 at * 7; *see also Grimes*, 2020 WL 3056060, at *6-8 (granting pretrial release where petitioner suffered from uncontrolled chronic asthma, increasing his risk of severe illness from COVID-19).

[59] *Salley*, 2020 WL 7024253 at *8-9.

[60] *See United States v. Green*, No. 19-233, 2020 WL 2084988, at *5 (M.D. Pa. Apr. 30, 2020) (denying temporary release despite petitioner's old age and well-managed diabetes and heart ailment because they were outweighed by the seriousness of petitioner's charges).

[61] 18 U.S.C. § 3142(g).

[62] *Id.*

[63] 18 U.S.C. § 3142(f) ("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence"); *United States v. Perry*, 788 F.2d 100, 114-15 (3d Cir. 1986) (stating, in dicta, "The judicial officer need only be convinced of dangerousness by clear and convincing evidence… the burden of persuasion ultimately rests upon the United States").

[64] ECF Doc. No. 11 at 10-13.

[65] Apr. 23, 2008 Presentence Investigation Report, ¶¶ 39, 42-45.

16

[66] 466 F. Supp. 3d 524, 527-32 (E.D. Pa. 2020).

[67] *Id.* at 531-32; *see also Carter*, 2020 WL 3412571, at *7-9 (denying pretrial release because petitioner's serious drug trafficking charges and the weight of the evidence against him, including video surveillance and incriminating audio and video recordings, outweighed his health concerns in light of COVID-19).

[68] 454 F. Supp. 3d 443, 450-452 (M.D. Pa. 2020).

[69] *Id.* at 452.